## STATE OF NEBRASKA, EX REL. M. B. MALLOY, V. WILLIAM F. CLEVENGER.

[FILED OCTOBER 3, 1889.]

1. **Counties**: DIVISION: TAXES: JURISDICTION OF OFFICERS. The boundaries of B. county formerly included what is now B. and R. counties—R. county having been stricken off and organized into a new county. In an application for peremptory writ of mandamus against the county treasurer of B. county to require him to collect the taxes due from the taxpayers of R. county, but which were levied by B. county prior to the division, it was *held*, that, as the officers of B. county had no authority nor jurisdiction in R. county, there was no duty devolving upon such treasurer in connection with the collection of the taxes referred to.

2. ———: ———: ———. R. county not being a party to the action, the question as to who is entitled to the revenues levied prior to the division is not decided.

ORIGINAL application for mandamus.

*M. B. Malloy, pro se.*

*W. F. Clevenger, pro se.*

No briefs filed.

REESE, CH. J.

This is an original application for a mandamus to defendant, who is the county treasurer of Brown county, to require him to collect from the taxpayers of what is now Rock county the unpaid taxes for the years 1884, 1885, 1886, 1887, and 1888, levied while the territory which now comprises Rock county constituted a part of Brown county, which said taxes were levied by the taxing officers of Brown county.

State, ex rel. Malloy, v. Clevenger.

It appears from the relation and stipulation of the parties that Brown county was duly organized on the 23d day of July, 1883, consisting of the territory now included in Brown and Rock counties; that the county boundaries continued as then established until the first day of January, 1889, when, by virtue of the elections held prior to that date, the new county of Rock was duly organized, and its permanent officers assumed charge of the county government; that during the years 1884 to 1888, inclusive, the taxing officers of Brown county levied the usual taxes on the property within the county boundaries, a part of which remains unpaid, and upon which the county of Brown issued its warrants to the extent of eighty-five per cent of the levy.

Practically two questions are presented, which are, first, Is Brown county entitled to these unpaid taxes? and second, If so, is it the duty of the treasurer of said county to make the collections?

The latter question would doubtless have to be answered in the negative, whatever might be the conclusion as to the first, as the duties and jurisdiction of the county treasurer would be limited to the territorial boundaries of his own county.

Since Rock county is not made a party to this action, no order or judgment can be rendered which would be binding upon it, and therefore the question as to who is entitled to the revenues, as between the two counties, cannot be decided.

In the stipulation filed we observe that it is agreed that the taxes in question are "due Brown county," and this suggestion is of frequent occurrence throughout the stipulation. For example, in the tenth paragraph of this paper, after showing the assessment and levy, it is said that "the greater part (of the taxes) has been delinquent and unpaid, and is due Brown county; that the respondent refuses to collect said taxes from the citizens of Rock county, or to

make an effort to collect the personal taxes from them, for the aforesaid years, that are due Brown county," etc. While we presume that nothing is claimed by this phraseology, and that it is used to convey the idea that the taxes were levied by the officers of Brown county prior to the division, yet should we conclude that it was the purpose to agree that the taxes were due Brown county, that could make no difference, as the question as to whom the taxes are due is one of law resulting from the existing facts and not one of fact to be proven or otherwise established. The question presented, while new in its application to this case, is not new in principle in many of its aspects. In *F., E. & M. V. R. R Co. v. Brown County,* 18 Neb., 516, and in *Morse v. Hitchcock County,* 19 Id., 566, questions somewhat similar to these in point of fact were presented and it was decided, as it must be in this case, that upon the organization of a new county the jurisdiction and duties of the officers of the old county over the territory included in the new, cease, and the administration of the affairs of the new county should be conducted only by its own officers. But there appears to be a distinction made by our statutes between new counties formed out of unorganized territory and those created by the division of a county already organized. The law governing new counties of the former class is fully reviewed by Judge MAXWELL in *Railroad Company v. Brown County, supra,* and need not here be referred to. That governing those of the former class is to be found in sections 10 to 18 inclusive of the same chapter (18) of the Compiled Statutes. Section 16 provides for a division of property, personal and real, choses in action, debts, liabilities, etc., between the counties. But whether this applies to uncollected taxes cannot now be decided, for the reason above given, that the necessary parties are not before the court. It must be sufficient now to say that there is no duty devolving upon the defendant in

connection with the collection of the taxes referred to, and therefore the writ cannot issue.

JUDGMENT ACCORDINGLY.

THE other Judges concur.